USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/5/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF WILLIAM LAGGNER

**ORDER**

1:22-mc-341-ALC-HJR

**HENRY J. RICARDO, United States Magistrate Judge.**

The undersigned issued a Report and Recommendation on January 28, 2025 (the "R&R"), ECF No. 38, in connection with an application to obtain discovery in aid of a foreign proceeding under 28 U.S.C. § 1782. Familiarity with this R&R is assumed. The applicant who initiated this proceeding, William Laggner ("Laggner"), now seeks reconsideration of one aspect of that R&R as it concerns respondent Anthony G. Watson ("Watson"). ECF No. 39. Laggner does not seek reconsideration as to the other respondent, The Bank of London Group Limited. For the reasons described below, the motion for reconsideration is **DENIED**.[1]

**I.    BACKGROUND**

The first question addressed in the R&R was whether Laggner's application satisfied the three statutory requirements for obtaining discovery under 28 U.S.C. § 1782. *See* R&R at 3–4. The only disputed requirement was whether Watson "resides or is found" within this District. R&R at 5. The Second Circuit construed

---

[1] Laggner also filed objections to the R&R within 14 days, as provided by Federal Rule of Civil Procedure 72. While the undersigned denies Laggner's request to reconsider the R&R, this order has no effect on Laggner's objections, which are before The Honorable Andrew L. Carter.

1

this statutory language as extending "to the limits of personal jurisdiction consistent with due process." *Id.* (*quoting In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019)). Thus, the key question posed by Laggner's application was whether Watson was subject to personal jurisdiction in this District.

The R&R then analyzed whether Watson was subject either to general personal jurisdiction or to specific personal jurisdiction. *See* R&R at 11–15 (general jurisdiction); 17 (specific jurisdiction). Based on this analysis, the R&R concluded that the only viable basis for asserting personal jurisdiction over Watson was "tag" jurisdiction resulting from personal service within the District. Stated differently, the R&R concluded that Watson was *not* subject to personal jurisdiction unless he was personally "tagged" within the District.

Laggner claimed to have satisfied this requirement by serving Watson with a copy of his motion papers while Watson was in New York. But Laggner did not serve Watson with either a summons or a subpoena while he was physically present here.[2] Thus, while Laggner had demonstrated that Watson could be found here, the R&R concluded, "Watson need not provide any discovery unless and until the Court authorizes service of a subpoena and Watson is actually served with a subpoena within this District, which would subject him to 'tag' jurisdiction." R&R at 15. The R&R advised the parties that, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of

---

[2] Watson denied that he had been served with Laggner's motion papers, but the undersigned accepted Laggner's allegation as true for purposes of deciding his application. This Order makes the same assumption, recognizing that Watson disputes this claim.

Civil Procedure 72(b), they had 14 days in which to file written objections to the R&R.

## II. RECONSIDERATION MOTION

Laggner filed written objections to the R&R, ECF No. 40, and also filed the instant reconsideration motion, which makes many of the same arguments as his objections. In the instant motion, Laggner seeks "limited reconsideration" of a "discrete, narrow issue," namely, whether Watson has been "found in" this District through personal service with the application for discovery before any subpoena was authorized. ECF No. 39 at 1.

"Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (cleaned up). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (cleaned up).

Here, Laggner raises a question that was not directly addressed in the five briefs filed in connection with this Section 1782 application: whether, having served Watson with his motion papers before his motion was granted, Laggner must then serve Watson with a subpoena to obtain discovery. Laggner cites several cases that were not cited in the prior briefing, which are addressed below. As discussed in

greater detail below, the undersigned is not persuaded that these authorities support reconsideration of the R&R.

## III.  DISCUSSION

Laggner's best authority is a decision issued by the District of Massachusetts, *Sandra Holdings Ltd. v. Al Saleh*, 18-MC-91406, 2019 WL 3072197 (D. Mass. July 15, 2019). In that case, the court determined that respondent Fawzi was "found" in the district within the meaning of Section 1782 because he was personally served with the application for discovery while within the district. Thus, *Sandra Holdings* supports Laggner's position. The question to consider is whether to follow *Sandra Holdings*.

The only authority that *Sandra Holdings* cited to support its conclusion was the Second Circuit's decision in *In re Edelman*, 295 F.3d 171 (2d Cir. 2002). The R&R discussed *Edelman*, which is binding precedent, in some detail. The problem for Laggner is that *Edelman* does not support the conclusion reached in *Sandra Holdings*. This Massachusetts decision contains a quotation from *Edelman* that omits the words set forth below bolded in brackets:

> "[I]f a person is served **[with a subpoena]** while physically present in the district of the court that issued the discovery order, then for purpose of § 1782(a), he is 'found' in that district."

*Compare Sandra Holdings*, 2019 WL 3072197, at *2, *with Edelman*, 295 F.3d at 180.

To the extent the *Sandra Holdings* court read *Edelman* to stand for the proposition that the service of *motion papers*—without a *subpoena*—subjects a

4

respondent to "tag" jurisdiction, the undersigned respectfully disagrees with that reading for two reasons. First, the quotation from *Edelman* omitted the words, "with a subpoena," which is the very instrument that was not served here. Second, such a reading fails to consider the competing positions of the parties in the *Edelman*. In other words, *Edelman* should be read in light of the particular dispute that it decided.

As Laggner recognizes, the *Edelman* decision arose in a procedural posture that is different from the instant case: the district court had authorized service of subpoenas at a time when respondent Taittinger, a French citizen, was not present in the district. The applicant later served Taittinger with a subpoena while he was physically present in New York. Thus, the Second Circuit was choosing between respondent's argument, which was "that a prospective deponent must be in the district at the precise time when the district court issues the discovery order," and petitioner's argument, which was that "a subpoena issued pursuant to a discovery order may be served on a district resident or a nonresident who is physically present in the district when served." *Edelman*, 295 F.3d at 177–78.

The Second Circuit sided with petitioner, concluding that physical presence in the district "when served" causes a respondent to be "found" within the district. *Id.* at 180. In reaching this conclusion, the Second Circuit looked to the "well settled case law on territorial jurisdiction," including the Supreme Court's decision in *Burnham v. Superior Court of California*, 495 U.S. 604 (1990). *Id.* at 179. This

5

line of authority focuses on the service of a summons while a defendant is physically present within the jurisdiction.

Given what *Edelman* actually decided (*i.e.*, that physical presence in the district when the subpoena is served is what matters) and the precedent it relied upon (which concerns service of summons within the jurisdiction), *Edelman* does not support the proposition that a respondent can be brought within a district court's jurisdiction through service of motion papers, as opposed to through service of a summons or subpoena, which are legal instruments that traditionally have held jurisdictional significance. To the extent *Sandra Holdings* read *Edelman* to support such a proposition, the undersigned respectfully declines to follow *Sandra Holdings*.

After *Sandra Holdings*, the decision most arguably relevant to Laggner's position is *In re Escallón*, 323 F. Supp. 3d 552 (S.D.N.Y. 2018). That case involved a Section 1782 application directed to two residents of Colombia (Patricia Ardila and Carlos Ardila), and a New York resident who allegedly worked for Mr. Ardila (Lucia Galarza). Laggner cites the portion of this decision observing that there was no dispute that Galarza was "found in" this District "because she was personally served here." ECF No. 39 at 1–2. Laggner claims that Galarza was served with only the motion papers, not a subpoena. Laggner appears to be correct on this factual point because the court in that case rejected the Section 1782 application and never authorized service of a subpoena.[3] Laggner presumably argues that the

---

[3] The fact that the *Escallón* court denied the application for discovery arguably renders the statement about Galarza being "found" dictum.

decision's use of the word "because" signifies that the court found that personal service of Galarza was what *caused* Galarza to be "found" within this District.

While this argument has linguistic appeal, Laggner reads too much into this quotation from *Escallón*. As the transcript of the oral argument in that case makes clear, there was no dispute that Galarza was subject to personal jurisdiction in this District because she resided here. *In re Escallón*, No. 18-MC-207, ECF No. 28, at 10 (S.D.N.Y. Sept. 14, 2018) ("Ms. Galarza is found in, resides in the Southern District of New York. That's not contested."). Thus, the *Escallón* court did not need to decide whether Galarza was "found" in this District, much less whether she was "found" here because she resides here or because she was served with motion papers here. Accordingly, unlike *Sandra Holdings*, which actually addressed the question that Laggner presents on reconsideration, *Escallón* did not. Thus, *Escallón* does not stand for the proposition that in-District service of motion papers alone causes a respondent to be "found" here.

The motion cites other decisions referring to the service of Section 1782 motion papers, but none of these decisions addresses "tag" jurisdiction at all, much less whether service of motion papers in the District subjects a respondent to "tag" jurisdiction. First, Laggner includes a quotation from *In re Aso*, No. 19-MC-190, 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019), mentioning that the discovery targets had been served with the application for discovery. That the targets had been served with the application, yet did not intervene in the proceeding, was pertinent to whether the requested discovery was "unduly intrusive or

7

burdensome." *Id.* However, the court did not mention service of the application in analyzing whether the subpoena targets were subject to personal jurisdiction. To the contrary, the portion of the decision discussing whether these entities were "found" in this District did not identify service of the motion papers as relevant to this this question.

Similarly, Laggner quotes a snippet from *In re Kuwait Ports Authority*, No. 22-MC-64, 2024 WL 4183210, at *1 n.1 (D.D.C. Aug. 6, 2024), observing that Crowell, the law firm targeted by the application, "has not filed a formal response to the Application, despite being served with the Application." But again, the location of service did not figure into the court's discussion of whether Crowell was "found" within that district. Instead, the court focused on the allegation that Crowell "maintains its principal office in the District of Columbia." *Id.* at *5.

Laggner also quotes a reference to the discovery target, Dr. Soo, being "served with the Application the day after it was filed" in *In re Align Technology, Inc.*, 22-MC-236, 2022 WL 18460717, at *1 (C.D. Cal. Dec. 15, 2022), *adopted by* 2023 WL 405316 (C.D. Cal. Jan. 24, 2023). But that court concluded that Dr. Soo was "found" within the district because "she resides in Los Angeles County, California." *Id.* at *4. Where the application was served played no role in the analysis.

Except for *Sandra Holdings*, none of the cases discussed above supports Laggner's contention that being served with motion papers in a judicial district causes a respondent to be "found" there for purposes of Section 1782.

Finally, Laggner suggests that a Section 1782 application can be treated like a motion, which can be served in accordance with Rule 5 of the Federal Rules of Civil Procedure. But service under Rule 5 is permitted only after a party has been served, or waived service, under Rule 4, which requires a summons. No summons has been issued or served here. In any event, the quotations from these cases are taken out of context. For example, Laggner quotes from *In re Beluga Shipping GmbH & Co.*, No. C 10-80034, 2010 WL 3749279 (N.D. Cal. Sept. 23, 2010) to contend that "Rule 5 applies to a Section 1782 petition." ECF No. 39 at 3 (quoting *Beluga Shipping*, 2010 WL 3749279 at *4). The implication of this quotation is that mere delivery of motion papers under Rule 5, as opposed to formal service under Rule 4, is sufficient to proceed under Section 1782. *Beluga Shipping* said nothing of the sort. Instead, this quotation comes from a part of the decision explaining that, once respondent Google had intervened in the suit, the petitioner needed to serve Google with all court filings. This quotation is not from the part of the decision discussing whether Google was "found" within the district. That requirement was satisfied because Google, a company with headquarters in Mountainview, California, *Beluga Shipping*, 2010 WL 3749279 at *1, is "located in the Northern District of California." *Id.* at *3.

## IV. CONCLUSION

Laggner presents no persuasive authority to support reconsideration.

Accordingly, his motion for reconsideration is **DENIED**.

Dated: September 5, 2025
      New York, New York

Henry J. Ricardo
United States Magistrate Judge